IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JERMAIN SANTELL HILL,

           Plaintiff,

v.                                               CIVIL ACTION NO. 2:19-cv-00140

ASHLEY HOLIDAY, et al.,

           Defendants.

## PROPOSED FINDINGS & RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 2.) Before this Court are the motions for summary judgment filed by Plaintiff Jermain Santell Hill ("Plaintiff") (ECF No. 28) and Defendants Ashley Holiday ("Holiday"), Ron [1] Webb ("Webb"), and Corporal Roop ("Roop") (collectively, "Defendants") (ECF No. 26). For the reasons explained more fully herein, it is respectfully **RECOMMENDED** that Plaintiff's motion (ECF No. 28) be **GRANTED IN PART** and **DENIED IN PART** and Defendants' motion (ECF No. 26) be **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

This 42 U.S.C. § 1983 action stems from a June 2017 prison disciplinary proceeding related to alleged threats of sexual assault made when Plaintiff was a federal

---

[1] It appears that Webb was misidentified in Plaintiff's complaint as Ron Webb. The documents submitted by the parties in support of their motions for summary judgment identify him as Ryan Webb.

pretrial detainee housed at South Central Regional Jail, a state-operated correctional facility located in Charleston, West Virginia. The evidence presently before this Court demonstrates that on June 15, 2017, Holiday and two other correctional officers were locking down the C-2 unit and brought another inmate to Plaintiff's cell to house him there with Plaintiff. (ECF No. 26-1 at 4.) Plaintiff purportedly refused to be housed with the inmate and threatened to sexually assault him. (*Id.*) Holiday informed Webb, her supervisor, about the situation, and Webb instructed her to lock down the other units and then come back for Plaintiff. (*Id.*) Holiday did so, and she took Plaintiff to the interview room and the supervisor's room to discuss the incident with Webb. (*Id.*)

Webb reported the incident, and Plaintiff was charged with violating Rule 1.03 of the Rules of Conduct, a Class One Violation in the Handbook of Inmate Rules and Procedures. (*Id.* at 2–3; ECF No. 26-2 at 2; ECF No. 26-3 at 5.) Rule 1.03 provides,

> **1.03 – Rape/Sexual Assault/Sex Acts:** No inmate shall physically force or attempt to force another person to submit to or perform any sexual act, or threatening [sic] any person with violence in order to compel or coerce him or her to commit a sexual act. Also, no inmate shall engage or attempt to engage in any sexual act, including sexual intercourse and sexual contact with another innate or inmate visitor, including kissing and fondling. No inmate shall expose his/her sexual organs to any person.

(ECF No. 26-3 at 5.) A Rule Violation Report detailing the charge was presented to Plaintiff on June 16, 2017. (ECF No. 26-2 at 2.)

On June 18, 2017, Roop presided over a disciplinary hearing during which Plaintiff was given an opportunity to question Holiday about the incident and call two other inmates as witnesses, although one of the inmates refused to testify. (ECF No. 26-4.)

Holiday and another correctional officer who was present each maintained that they overheard Plaintiff make the threat, and Plaintiff and the inmate who testified on his behalf maintained that they did not hear him make the threat.  (*Id.*)  At the conclusion of the hearing, Roop explained on the record that he found Plaintiff guilty of the rule violation because he had "multiple officers telling [him] the same thing." (*Id.*)  Roop sanctioned Plaintiff with twelve days of lockdown inside his cell, with the opportunity to come out to shower and for recreation time at night.  (*Id.*)  He also informed Plaintiff of his right to appeal the decision.  (*Id.*)  After the hearing, Roop completed the "Results of Hearing" section of the Rule Violation Report and marked that Plaintiff was found guilty and sanctioned to "12 days," but he did not complete the section of the form asking him to describe his findings in detail.  (ECF No. 26-2 at 2.)

Plaintiff appealed Roop's decision the same day it was issued, asserting that he did not violate Rule 1.03 and that Holiday "did not provide any proof of guilt other than the allegation."  (ECF No. 26-5 at 2.)  Plaintiff also pointed out that Roop "never wrote any reason or finding of fact on which he based his decision in the matter." (*Id.*)  Roop's decision was affirmed, with the following remarks: "You threatened a violent act.  The reports and officers['] testimony stand."  (*Id.*)

When Plaintiff was transferred to federal custody, information about the rule violation was communicated to the Bureau of Prisons.  (*See* ECF No. 28 at 3.)

Defendants filed their motion for summary judgment on April 29, 2021.  (ECF No. 26.)  Plaintiff filed an untimely response on August 10, 2021 (ECF No. 31), but Defendants did not file a reply.  Plaintiff filed his motion for summary judgment on April 30, 2021.  (ECF No. 28.)  Defendants filed a timely response on May 11, 2021 (ECF No.

30), but Plaintiff did not file a reply. As such, the motions for summary judgment are fully briefed and ready for resolution.[2]

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

---

2  By separate Proposed Findings and Recommendation, the undersigned has recommended summary dismissal, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), of Plaintiff's equal protection claims against all Defendants and his claims against Administrator Leonard (who was not served with process) for failure to state a claim upon which relief can be granted.

4

### III. ANALYSIS

#### A. *Due Process Claims*

Defendants argue that they are entitled to summary judgment as to Plaintiff's due process claims against them stemming from the prison disciplinary proceeding. (ECF No. 27 at 8–10.) "[D]isciplinary segregation of a pretrial detainee, intended as a penalty for disciplinary infractions, implicates a protected liberty interest under the Fourteenth Amendment and may not be imposed without due process." *Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016).³ An inmate charged with violating prison rules "is entitled . . . to written notice of the alleged disciplinary violation at least 24 hours before the hearing" on the charge is scheduled to take place, "a hearing[] at which [the] inmate may call witnesses and present documentary evidence," and "a written statement describing the reasons for the disciplinary action taken." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 563–65 (1974)). Defendants contend that the process provided to Plaintiff "met, or exceeded," these requirements. (ECF No. 27 at 9.) But Plaintiff asserts that Roop "made the adjudication of guilt without any written statement of facts as to any evidence relied upon." (ECF No. 31 at 2.) He also argues that Defendants "den[ied] him the right to face his accuser." (ECF No. 28 at 1.)

Turning first to Plaintiff's latter contention, an inmate involved in a prison disciplinary proceeding is "not entitled to confront the witnesses against [him]." *Brown v. Braxton*, 373 F.3d 501, 504 (4th Cir. 2004) (citing *Wolff*, 418 U.S. at 567). Although Plaintiff was given the opportunity to ask Holiday questions during the hearing (ECF No.

---

3 Plaintiff was sentenced to a twelve-day lockdown in his cell, rather than administrative segregation that required placement in a separate unit like the plaintiff in *Dilworth*. (*See* ECF No. 26-4.) However, because Defendants appear to concede that some process was required in this case (*see* ECF No. 27 at 8), this a distinction without a difference.

5

26-4), it was not required. Accordingly, that Plaintiff did not cross-examine any other purported witness or accuser does not amount to a due process violation.

But Roop did not provide Plaintiff with a written explanation of his findings after the hearing. Although Roop completed some of the "Results of Hearing" section of the Rule Violation Report form, he did not write anything in the space reserved for detailing his findings and directing that he "Describe all testimony and evidence upon which the verdict is based." (ECF No. 26-2 at 2.) Defendants seem to suggest that the "written statement" requirement is satisfied in this case because the hearing was recorded and Roop "advised Plaintiff, on the record, that he was found guilty of the rule violation and that his discipline would be twelve (12) days confined to his cell" and later provided Plaintiff "[a] written confirmation of [his] decision." (ECF No. 27 at 9; ECF No. 30 at 6.) However, the written statement itself must include "the evidence relied on and reasons[] for the disciplinary action." *Wolff*, 418 U.S. at 564; *see Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("The written statement requirement . . . is not onerous. The statement need only illuminate the evidentiary basis and reasoning behind the decision." (citations omitted)). Roop's clearly does not. (ECF No. 26-2 at 2.) The undersigned **FINDS** that this constitutes a due process violation.

Defendants argue that Roop is nonetheless entitled to qualified immunity. (ECF No. 27 at 13–15.) "Qualified immunity protects officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537–38 (4th Cir. 2017) (internal quotation marks omitted). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what is he doing violates that right." *Id.* at 538 (internal quotation marks omitted). In short, there must

6

be "a case where an officer acting under similar circumstances . . . was held to have violated the [constitutional provision at issue]." *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Safar v. Tingle*, 859 F.3d 241, 247 (4th Cir. 2017). Although the case need not be "directly on point for a right to be clearly established, existing precedent must have placed the . . . constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted). [4] On June 18, 2017, the date on which Roop held the disciplinary hearing and completed the "Results of Hearing" section of the Rule Violation Report form, it was clearly established that the factfinder in a prison disciplinary hearing must provide the inmate with a written explanation of the reasons for the decision. *Wolff*, 418 U.S. at 564–65. Therefore, the undersigned **FINDS** that Roop is not entitled to qualified immunity for the due process violation.

For these reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 28) be **GRANTED** as to his § 1983 due process claim against Roop and that Defendants' motion for summary judgment (ECF No. 26) be **DENIED** as to that claim.

B. *Conditions-of-Confinement Claims*

Defendants argue that Plaintiff has not established a cognizable challenge to his conditions of confinement either between the date of the incident and the date of the disciplinary hearing or after the hearing when he was placed on lockdown in his cell as a disciplinary sanction. (ECF No. 27 at 10–13.) As an initial matter, to the extent Plaintiff seeks to allege Eighth Amendment violations related to his conditions of

---

4 Only cases from the United States Supreme Court, the Fourth Circuit Court of Appeals, or the West Virginia Supreme Court of Appeals are relevant to that determination in this case. *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) ("To determine if the right in question was clearly established, we first look to cases from the Supreme Court, this Court of Appeals, or the highest court of the state in which the action arose." (citing *Owens* ex rel. *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004))).

confinement, the Eighth Amendment applies only to convicted prisoners. *See Hill v. Nicodemus*, 979 F.3d 987, 990 (4th Cir. 1992). At the time of the incidents that are the subject of this action, Plaintiff was a pretrial detainee who had not yet been convicted of any crime.

Defendants concede that Plaintiff may contest his conditions of confinement via a Fourteenth Amendment substantive due process claim. (ECF No. 27 at 6; *see id.* at 11–12.) "As a general proposition . . . individualized restrictions—whether disciplinary or administrative—implicate procedural due process concerns. In some circumstances, however, the treatment of a pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment that will sustain a substantive due process claim." *Williamson v. Stirling*, 912 F.3d 154, 175 (4th Cir. 2018). "In order to prevail on a substantive due process claim, the pretrial detainee must show that a particular restriction was either '(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective.'" *Id.* at 174 (quoting *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005)).

Turning first to the fact of Plaintiff's confinement between the date of the alleged incident and the disciplinary hearing, "confining [an inmate] to administrative segregation pending completion of the investigation of the disciplinary charges against him is not based on an inquiry requiring any elaborate procedural safeguards." *Hewitt v. Helms*, 459 U.S. 460, 475 (1983). Moreover, Defendants seem to suggest that the lockdown before the disciplinary hearing was warranted due to the seriousness of the violation. (ECF No. 27 at 10.) The Rule 1.03 violation alleged is indeed categorized as a Class One Violation, the most egregious. (ECF No. 26-3 at 5.) Under these circumstances, Plaintiff's brief three-day confinement pending his disciplinary hearing

8

does not appear to have been punitive and is likely reasonably related to orderly prison administration. *See Dilworth*, 841 F.3d at 255 ("[P]risons and jails may and routinely do place inmates charged with disciplinary infractions in 'administrative segregation' pending their disciplinary hearings, allowing both prison officials and inmates time to investigate and prepare for those hearings."). The undersigned **FINDS** that Plaintiff has not demonstrated a substantive due process violation stemming from his confinement between the incident and his disciplinary hearing.

Moving on to Plaintiff's disciplinary sanction of twelve days' lockdown in his cell, during which he claims he was subject to restrictions on his abilities to shower and use the telephone, Defendants contend that "the restrictions . . . should be view [sic] with deference because they relate to imposing discipline and promoting internal security." (ECF No. 27 at 11.) "[A]lthough jail officials are entitled to impose discipline and promote internal security by placing restrictions on pretrial detainees, such measures must yet be rationally related to a legitimate governmental purpose, regardless of the procedural protections provided." *Williamson*, 912 F.3d at 176 (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); *Surprenant v. Rivas*, 424 F.3d 5, 13 (1st Cir. 2005)). To that end, "disciplinary measures based on a pretrial detainee's misconduct in custody and proportional thereto are not 'punishment' within the meaning of *Bell* and therefore are not unconstitutional." *Id.* at 176 n.18 (citing *Bell*, 441 U.S. at 540). Associated temporary restrictions on an inmate's opportunities to leave his cell to shower, use the telephone, or participate in recreation likewise do not generally represent a constitutional deprivation. *See, e.g.*, *Steele v. Cicchi*, 855 F.3d 494, 503 & n.9 (3d Cir. 2017) (holding that refusal to provide pretrial detainee "with unlimited, non-legal telephone privileges during his time in administrative segregation" did not violate substantive due process and

9

citing similar cases from other circuits); *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (concluding that denial of "visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period" did not constitute punishment of detained parolee). The undersigned therefore **FINDS** that the restrictions imposed during Plaintiff's twelve-day lockdown do not run afoul of substantive due process.

For these reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment (ECF No. 28) be **DENIED** as to his conditions-of-confinement claims and Defendants' motion for summary judgment (ECF No 26) be **GRANTED** as to those claims.

C. *Retaliation Claims*

Defendants argue that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because he has not established any adverse action against him after he appealed his disciplinary sanctions. (ECF No. 27 at 16–18.) "To state a colorable First Amendment retaliation claim, a plaintiff must allege that he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (internal quotation marks and alterations omitted). In his Complaint, Plaintiff alleges that unnamed officers "threatened [him] with retaliation when [he] spoke of filing a grievance" about his conditions of confinement. (ECF No. 1 at 1.)

However, to withstand a motion for summary judgment, Plaintiff "cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)); *see* Fed. R. Civ. P. 56(c) (providing that

summary judgment arguments must "cit[e] to particular parts of materials in the record"). Not only has Plaintiff not provided evidence that the threat alleged in the Complaint occurred, he has also not shown that Defendants were the ones who threatened him. Accordingly, the undersigned **FINDS** that Plaintiff's retaliation claims fail and respectfully **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 28) be **DENIED** as to those claims and Defendants' motion for summary judgment (ECF No. 26) be **GRANTED** as to those claims.

  D. *Defamation Claims*

Defendants contend that summary judgment should be granted in their favor as to Plaintiff's state-law defamation claims because the allegedly defamatory statements were privileged. (ECF No. 27 at 18–20.) In West Virginia, "[t]he essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 5, *Zsigray v. Langman*, 842 S.E.2d 716 (W. Va. 2020) (quoting Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983)). Defendants assert that the allegedly defamatory statements are subject to both absolute and qualified privilege. (ECF No. 27 at 18–20.)

"An absolute privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously." *Crump*, 320 S.E.2d at 70 (quoting *City of Mullens v. Davidson*, 57 S.E.2d 1, 6 (W. Va. 1949)). "With a few exceptions . . . absolutely privileged communications are limited to legislative, judicial and quasi-judicial

11

proceedings and other acts of the State." *Id.* (quoting *Parker v. Appalachian Elec. Power Co.*, 30 S.E.2d 1, 4 (W. Va. 1944)). The Supreme Court of Appeals of West Virginia ("SCAWV") has applied absolute privilege to statements made in the context of litigation, similar to a witness or litigation privilege, *Zsigray*, 842 S.E.2d at 725, to statements made in the context of a lawyer disciplinary proceeding, *Farber v. Dale*, 392 S.E.2d 224, 227 (W. Va. 1990), and to statements made prior to the filing of a legitimate judicial proceeding, *Collins v. Red Roof Inns, Inc.*, 566 S.E.2d 595, 603 (W. Va. 2002).

Courts in four states—Alabama, Illinois, Michigan, and Oklahoma—have concluded that statements made in connection with a prison disciplinary proceeding are absolutely privileged. *Wright v. State*, 757 So. 2d 457, 460–61 (Ala. Civ. App. 2000); *Kruger v. Fencel*, No. 3:20-cv-01119-NJR, 2021 WL 1634632, at *3 (S.D. Ill. Apr. 27, 2021); *Couch v. Schultz*, 483 N.W.2d 684, 686 (Mich. Ct. App. 1992); *Hatcher v. Sumpter*, 825 P.2d 638, 639–40 (Okla. Ct. App. 1992). These courts have reasoned that "allowing defamation actions against correctional officers could have a chilling effect on reporting offenses within prison and would inundate the courts with lawsuits by prisoners." *Wright*, 757 So. 2d at 460 (citing *Couch*, 483 N.W.2d at 686–87). This comports with the SCAWV's direction that "[a]bsolute privilege is limited to those situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives." *Crump*, 320 S.E.2d at 77 (internal quotation marks omitted). However, the SCAWV has also declined to extend absolute privilege to statements made in connection with a criminal investigation, determining that such statements are instead subject to qualified privilege. *Zsigray*, 842 S.E.2d at 725; *see Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 27 (W. Va. 2002). In light of that, the undersigned cannot say with confidence that the SCAWV would adopt the Alabama,

Michigan, and Oklahoma courts' reasoning and apply absolute privilege to allegedly defamatory statements made in connection with a prison disciplinary proceeding. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992) ("[A] federal court sitting in diversity has a duty to apply the operative state law as would the highest court in the state in which the suit was brought.").

However, it is likely that the SCAWV would apply qualified privilege to Defendants' reporting of the incident at issue in this litigation to federal prison officials. "A qualified privilege exists when a person publishes a statement to those persons who have a legitimate interest in the subject matter . . . ." Syl. Pt. 10, *Crump*, 320 S.E.2d 70 (quoting Syl. Pt. 4, *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219 (W. Va. 1994)). It serves "the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public." *Belcher*, 568 S.E.2d at 27 (quoting Syl. Pt. 4, *Dzinglski*, 445 S.E.2d 219). The Court of Appeals of Ohio has determined that qualified privilege shielded a correctional officer from a defamation claim based on his reporting of a violation of prison rules, stating, "Public policy concerns dictate that persons employed within the prison system, especially correction officers who are directly involved with the inmate population, be afforded a qualified privilege in reporting violations of prison rules in order to maintain the safety and security of the institution, its prisoners, and its employees." *Watley v. Ohio Dep't of Rehabilitation & Corr.*, No. 07AP–902, 2008 WL 2854535, at *8 (Ohio Ct. App. July 24, 2008). Given this reasoning, surely it can be said that federal prison officials had a legitimate interest in knowing that Plaintiff was found guilty of a violation of prison rules while he was a federal pretrial detainee at a state-operated facility. The undersigned **FINDS** that Defendants' allegedly defamatory statements are subject to

13

qualified privilege under these circumstances. Accordingly, it is respectfully recommended that Plaintiff's motion for summary judgment (ECF No. 28) be **DENIED** as to his defamation claims and Defendants' motion for summary judgment (ECF No. 26) be **GRANTED** as to those claims.

### IV. RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion (ECF No. 28) be **GRANTED IN PART** and **DENIED IN PART** and Defendants' motion (ECF No. 26) be **GRANTED IN PART** and **DENIED IN PART**. It is further **RECOMMENDED** that the presiding District Judge schedule a trial in this matter to ascertain Plaintiff's damages for his § 1983 due process claim against Roop.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Copenhaver.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985);

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

October 18, 2021

Dwane L. Tinsley
United States Magistrate Judge